EDWARD PATROCINIO *v.* JOHN C. YALANIS ET AL.

MURRAY DRESSLER ET AL. *v.* JOHN C. YALANIS ET AL.
(2201)
(2202)

DUPONT, C.P.J., BORDEN and SPALLONE, Js.

Argued February 13—decision released May 14, 1985

*Richard P. Weinstein,* for the appellants (plaintiffs).

*Louis P. Kocsis,* for the appellees (defendants).

BORDEN, J. These are appeals from the judgments in two actions for amounts due on promissory notes.

The trial court consolidated the actions for trial and appeal because they arise from the same set of facts.

In 1978, the defendant John Yalanis[1] borrowed money from the plaintiffs and used it to start an electronics distributorship known as P.J.'s, Inc. At that time, the defendant owned an undivided one half interest in his family home. By a quitclaim deed dated January 29, 1980, the defendant conveyed his interest in this property to his wife, Elaine Yalanis. The defendant received no monetary consideration for this transfer. At the time of the transfer, his only other asset was 51 percent of the shares of stock in P.J.'s, Inc. He continued to pay off the debts to the plaintiffs in a timely fashion after the transfer. He ceased making payments in July, 1981. P.J.'s, Inc., which had had some financial difficulties, stopped doing business on September 30, 1981, after its single supplier of merchandise was unable adequately to supply its needs.

The plaintiffs brought suit to recover the amounts due on the promissory notes, and to set aside the transfer of the defendant's interest in the family home as a fraudulent conveyance pursuant to General Statutes § 52-552.[2] The plaintiffs also sought an accounting of the assets of the corporation. The trial court rendered judgments for the plaintiffs against all three defendants for the amounts claimed under the notes, but found for the defendants on the counts alleging fraudulent transfer. The court refused to require an accounting of the corporate assets. The plaintiffs appeal from the judg-

---

[1] The defendants in this action were John Yalanis, his wife, Elaine Yalanis, and P.J.'s, Inc. For purposes of this opinion, however, John Yalanis will be referred to as the defendant, although the decision applies to all the defendants.

[2] General Statutes § 52-552 provides: "All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs."

ments in favor of the defendants on the third and fourth counts of the complaint, which contained the allegations of fraudulent transfer.[3] We find no error.

Under the fraudulent conveyance statute; General Statutes § 52-552; "[a] person to whom the grantor was indebted and who wishes to avoid the conveyance has the burden of showing either (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligation or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. *Zapolsky* v. *Sacks,* 191 Conn. 194, 200, 464 A.2d 30 (1983); *Denison Development Co.* v. *Gunther,* 189 Conn. 333, 335, 455 A.2d 1340 (1983); *Molitor* v. *Molitor,* 184 Conn. 530, 535–36, 440 A.2d 215 (1981)." *Bizzoco* v. *Chinitz,* 193 Conn. 304, 312, 476 A.2d 572 (1984). These two tests refer to constructive fraud and actual fraud, respectively. The issues presented by the plaintiffs on appeal revolve around these basic theories of fraudulent conveyance, both of which they alleged in their complaint.

We first consider the plaintiffs' argument that the court used the wrong standard of proof in determining if fraud existed. "Connecticut law has firmly established that fraud must be proven by a standard more exacting than that of a fair preponderance of the evidence. *J. Frederick Scholes Agency* v. *Mitchell,* [191 Conn. 353, 358, 464 A.2d 795 (1983)]. The standard of proof for some cases such as those involving the acquisition of title by adverse possession, the termination of parental rights, libel, *fraud,* or reformation of a deed or contract is that of clear and convincing proof, a standard greater than proof by a fair preponderance of the evidence but less than proof beyond a reasonable

---

[3] The plaintiffs, in their brief, also challenged the trial court's decision on the second count, which requested an accounting of the corporate assets, but withdrew this claim at oral argument.

doubt." (Emphasis added.) *Kavarco* v. *T.J.E., Inc.,* 2 Conn. App. 294, 296, 478 A.2d 257 (1984). "Such a burden of persuasion requires a reasonable belief that 'the facts asserted are highly probably true [or] that the probability that they are true . . . is substantially greater than the probability that they are false . . . .' " *Clark* v. *Drska,* 1 Conn. App. 481, 487, 473 A.2d 325 (1984).

The trial court properly used this intermediate standard of proof. At the outset of its oral decision on the claims of fraudulent conveyance, the court stated that "any claim of fraud requires a very high standard of proof" and that this standard was "higher than a mere preponderance of the evidence." While the court did not state specifically that the standard it was applying was that of clear and convincing proof, possibly for fear of getting caught in the "quagmire of descriptive words for [this] quantum of proof"; id., 487; it sufficiently indicated to the parties that it was applying the required higher standard of proof. Cf. *Kavarco* v. *T.J.E., Inc.,* supra, 297–98. The trial court then concluded that the plaintiffs "did not sustain the high burden of proof [for] establishing fraud." The court did not err; it clearly applied a standard of proof higher than the normal civil standard of preponderance of the evidence but lower than the criminal standard of beyond a reasonable doubt.

The plaintiff's next argument arises from the plaintiff's allegations of constructive fraud, in particular the claim that the transfer by the defendant rendered him unable to meet his obligation. See *Bizzoco* v. *Chinitz,* supra. The plaintiffs argue that the correct measure of insolvency used to determine whether the debtor was able to meet his obligation is a balance sheet test. Essentially, they urge that the proper inquiry is whether, after the transfer, the value of the debtor's liabilities exceeds the value of his assets.

The court used a narrower measure of insolvency, an income stream test. Rather than looking abstractly at the liabilities and assets of the debtor, the court inquired into whether the debtor in actuality was able to meet his then existing obligations as they became due.

Many standards exist to determine insolvency. See, e.g., Collier on Bankruptcy (15th Ed.) § 547.26; Glenn, Fraudulent Conveyances and Preferences (Rev. Ed. 1940) § 272; 37 C.J.S., Fraudulent Conveyances § 106. The Uniform Fraudulent Conveyance Act was drafted, in part, because of "the absence of any well recognized, definite conception of insolvency." Uniform Fraudulent Conveyance Act (1978), Commissioners' Prefatory Note, p. 162. Connecticut has not adopted the Uniform Fraudulent Conveyance Act, however. *Molitor* v. *Molitor,* supra, 535. No definite measure of insolvency has been adopted by the legislature or courts in Connecticut in the context of fraudulent conveyances. The trial court, therefore, was not bound by law to apply any particular test.

The trial court properly applied the income stream test in this case. This measure of insolvency was the common law measure; Nadler, The Law of Bankruptcy (2d Ed.) § 28; which stemmed from the English statute on which the Connecticut law is based. *Molitor* v. *Molitor,* supra; Bigelow, Fraudulent Conveyances (Rev. Ed. 1911), pp. 720–21. Since General Statutes § 52-552 codifies the common law of fraudulent conveyances; *Molitor* v. *Molitor,* supra; the trial court properly applied the common law measure of insolvency.

The trend of recent Connecticut decisions involving fraudulent conveyances also indicates the propriety of the standard used by the trial court. For example, the Supreme Court stated in *Molitor* v. *Molitor,* supra, 536, that "[a] person is insolvent for these purposes when

he is unable to pay his then-existing debts." The court then looked not only at the debtor's financial affidavits to determine the net value of his assets and liabilities, but also to the termination of the debtor's employment and to the fact "that his substantial income from that source would shortly cease, thus impairing his future ability to make regular payments to his other creditors." Id., 537. In *Bizzoco* v. *Chinitz,* supra, 312–13, the Supreme Court stated not only that the trial court in that case could reasonably have found that the debtor had "little or no net value" but that it was entitled to determine whether the value of the defendant's stock in a closely held corporation was enough "to enable the defendant to pay his continuing debt to the plaintiff . . . . " Our courts, therefore, do not adhere rigidly to any single measure of insolvency, but use both the balance sheet test, the income stream test, or a combination of both.

The trial court was required only to select an appropriate measure of insolvency under the facts and circumstances of the case before it and apply that measure consistently and equitably. If so applied, this court will not nullify the application of that standard unless the facts do not support it or the trial court abused its discretion.

In this case, where no evidence was presented of the defendant's net value, the trial court was justified in applying the income stream test. A review of the record indicates that this test was consistently and equitably applied in determining that the transfer did not render the defendant insolvent. The defendant testified that he was in good financial shape at the time of the transfer, that he had a functioning business and was able to pay his existing debts. In fact, he continued to pay the debts owed to the plaintiffs for seventeen months after the transfer. The defendant's federal income tax returns for 1979 and 1980 were in evidence

and supported his testimony. The trial court did not abuse its discretion in using the narrower measure of insolvency or err in determining that, as a consequence of the transfer of his interest in the home to his wife, the defendant was not rendered insolvent.

The plaintiffs' final claim challenges the finding that no actual fraud was proven. The court stated that it believed the defendant and that he was "completely truthful in almost everything that he said." The court therefore found that the defendant had several motivations for making the transfer but did not intend to defraud his then existing creditors. We cannot say that this finding was clearly erroneous. Furthermore, the record is devoid of any evidence that the grantee of the transfer, the defendant's wife, participated in the transfer with any intent to defraud, an element which is required in order to prove a claim of fraudulent conveyance based on actual fraud. *Bizzoco* v. *Chinitz,* supra. This claim must fail for this reason as well.

There is no error in either appeal.

In this opinion the other judges concurred.