[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above cases have been consolidated for trial. In the first, Docket No. 88-278073, John McKechnie and Allan Lee seek foreclosure of a mechanic's lien and money damages for the reasonable value of carpentry work they claim to have performed at two houses in New Haven owned by defendant Frank Vandever and subsequently transferred by him to his wife, defendant Cheryl Vandever. Defendant Union Trust Company is a mortgagee as to both properties at issue.
A default for failure to appear entered against Frank Vandever on April 3, 1989.
In the second case, Docket No. 88-274532, McKechnie and Lee allege that defendant Cheryl Vandever received a quitclaim deed from her husband conveying to her his interest in three properties in Guilford. The plaintiffs claim that these transactions were fraudulent consequences which rendered Frank Vandever insolvent. In a second count the plaintiffs claim that Cheryl Vandever was unjustly enriched when she initially acquired her own interest in one of the three properties before the quitclaim of her husband's interest to her, in that "monies of the plaintiffs in this action were utilized in said purchase."
In the second suit, the plaintiffs ask that the conveyances of the interests of Frank Vandever to defendant Cheryl Vandever be set aside and that a constructive trust "be impressed upon said property in favor of the Plaintiffs."
At the conclusion of the plaintiffs' case, the court granted a motion pursuant to 302 P.B., for dismissal of the fraudulent conveyance claims for the reason that the plaintiffs had failed to make out a prima facie case. The reasons for that ruling are articulated below.
The court finds the facts to be as follows. In the early fall of 1986, the plaintiffs, who were trained as carpenters, had just emigrated from Liverpool, England, and plaintiff McKechnie was living next door to property owned by defendant Frank Vandever. Vandever asked McKechnie and Lee, with whom McKechnie had gone into partnership, to take over the renovation of the CT Page 743 house on Farren Avenue from Vandever's brother, who had undertaken some amateurish remodeling efforts.
The plaintiffs proceeded without a written contract, and they agreed to renovate the apartments on the first and second floors and create an apartment from space on the third floor in return for payment in the amount of $600.00 a week to each of them. Vandever further agreed either to furnish materials or to reimburse the plaintiffs for materials needed in the renovations.
The plaintiffs began work in mid-April on the Farren Avenue property, however, Vandever did not comply with the payment schedule, though he did reimburse McKechnie sporadically for materials. This case was tried under the unusual circumstances that Vandever was known by the plaintiffs to be unable to attend the trial because of incarceration, and the court has considered this in assessing the credibility of witnesses who testified with the knowledge that rebuttal was not possible. While the plaintiffs did not recall that they had received any initial payment at the time they began work, the court finds that Vandever paid McKechnie $5,000.00 on April 16, 1987 (Ex. 3) and infers that this money represented an initial payment against which the plaintiffs were to bill their time and materials.
Vandever made the following payments to McKechnie, who handled the finances for McKechnie and his partner, Lee, as the work progressed:
1. 4/16/87 $ 5,000.00
2. 6/24/87 200.00
3. 7/__/87 2,000.00
4. 8/27/87 175.00
5. 10/9/87 20,000.00 ($10,000 for each)
The court finds that of the above payments, $25,000.00 represented payment for the plaintiffs' labor, $2,000.00 represented a payment made to be passed on to subcontractors, and the other payments represented reimbursements for materials. As of October 9, 1987, the court finds that the plaintiffs were due $31,200.00 for their twenty-six weeks of work. On the basis of receipts and checks received in evidence, the court further finds that the plaintiffs had advanced $5,563.01 of their own funds for materials for the Farren Avenue renovations from April 15 to October 9, 1987 and that as of that date they were due $5,188.01 for materials after deduction of the payments totaling $375.00 set forth above. CT Page 744
In the fall of 1987, Vandever's financial situation was such that he conceived the idea of buying another rental property and using part of the proceeds of a mortgage on the Farren Avenue property to pay the plaintiffs for their work at Farren Avenue. The plaintiffs agreed to his proposal to revise the original agreement to the effect that if the plaintiffs renovated the Nash Street property so that it could be sold as a tenantable two-family house, Vandever would pay them at the rate of $150.00 per man per day for their labor, plus a one-third division of the profits of eventual sale, such that Lee, McKechnie and Vandever would each receive one-third of any profits of sale.
In reliance on this agreement the plaintiffs agreed to continue work on the house at Farren Avenue to the point that tenants could be brought in and some income could be generated. They also agreed to renovate the two units at the Nash Street house. Receipts for materials received in evidence indicate that the plaintiffs began purchasing materials for the Nash Street project as early as September 3, 1987 (Ex. B, invoice 0441383).
Vandever had entered into an agreement to buy 83 Nash Street at the time he hired the plaintiffs to work on the project, however, he did not obtain title to 83 Nash Street until March 28, 1988, when he received a deed from the Administrator of the estate of Frank Tyska after approval of the sale by the probate court (Ex. AA). The purchase price recited in the deed is $90,000.00. On the same date, Vandever gave a mortgage in the amount of $70,000.00 to Union Trust (Ex. 12).
The plaintiffs both testified that they began work at 83 Nash Street on March 9, 1988, several weeks before Vandever took title, and that between that date and the end of May 1988 they gutted the two apartments, re-sheetrocked, rebuilt stairs, put in new bathroom floors, cabinets and fixtures, supervised installers of siding. They have presented evidence to establish that they spent $4,580.00 for materials for 83 Nash Street for which Vandever was to reimburse them.
Checks received in evidence indicate that Vandever paid McKechnie $6,849.00 between October 1987 and the end of March 1988, and the court finds these payments to have been, in part, reimbursements for materials for 83 Nash Street and, in part, payment for labor performed. While McKechnie claims that some of the checks made out to him by Vandever were for payments to be passed along to subcontractors, he failed to identify the name and amount of payment claimed to have been made to any subcontractor, and the plaintiffs presented no receipts as to the claimed cash payments. The court therefore rejects the plaintiffs' claims that not all the checks made out to McKechnie constitute payments to CT Page 745 the plaintiffs.
On May 26, 1988, the installers of the siding at 83 Nash Street were completing their subcontract work and clamoring for payment. McKechnie arranged to meet Vandever, who stated that he had no money to pay the siders. The plaintiffs then stopped work on the Nash Street job and caused mechanic's liens to be filed on May 27, 1988 on both 150-152 Farren Avenue and 83 Nash Street.
I. Validity of the Liens
150-152 Farren Avenue
Union Trust, to whom Vandever gave a mortgage in the amount of $100,000.00 as to the Farren Avenue property on October 9, 1987, argues that the mechanic's lien is invalid because it was untimely. Section 49-34 C.G.S. requires that mechanic's liens be filed within ninety days after the lienor has ceased to perform services or furnished materials.
The plaintiffs have testified that ninety-five percent of the work at Farren Avenue was complete as of October 1987 but that they went back in February 1988 and continued to complete various details, including work on the property on May 26, 1988. Plaintiff McKechnie has also testified, however, that the remaining items were worked on between November 1987 and February 1988 (before the plaintiffs began work at 83 Nash Street). The court does not find credible plaintiff Lee's testimony that he performed work at 150-152 Farren Avenue on May 24-26. No records of any kind support the plaintiffs' claims that they were working at Farren Avenue during the ninety-day period before they filed their lien. They have presented no receipts for any materials used at Farren Avenue during that period, and the inconsistencies in their testimony concerning when they left the Farren Avenue job, coupled with a notable vagueness as to the work they claim to have done during the ninety-day period, leads the court to conclude that the plaintiffs left the Farren Avenue job in late October 1987 and returned, if at all, between October and early February 1988 to remedy unfinished items about which tenants had complaints.
Even if the plaintiffs went back to do some minor work at Farren Avenue after eventually leaving the job at the end of October 1987, a lienor may not, by a delayed provision of some trivial amount of work or materials, extend the time for filing the lien. Martin Tire and Rubber Co. v. Kelly, 99 Conn. 396, 399-400
(1923) Peck v. Brush, 90 Conn. 651, 656 (1916); Battistelli v. Jacobson, 13 Conn. Sup. 196, 198 (1944).
The plaintiffs' lien as to 150-152 Farren Avenue is invalid CT Page 746 because untimely, and it is hereby ordered discharged.
83 Nash Street
Union Trust, the mortgagee of this property, asserts that the plaintiffs' lien is invalid because the plaintiffs began work on the property without consent of the owner of the property, which was, until March 28, 1988, the estate of Frank Tyska. While Union Trust correctly observes that a lien cannot be maintained against an owner's interest unless the owner has consented to the performance of the work on the property, clearly the plaintiffs have asserted no lien as to the seller but only as to the interest of Frank Vandever, the record owner at the time of the lien and the party with whom they contracted to perform renovations. The cases cited by the Bank all concern situations in which the lien was asserted against the interest of a party other than the party with whom the lienor had contracted to perform services.
The Bank further argues that the lien as to 83 Nash Street is invalid because Vandever's agreement to pay the plaintiffs two-thirds of any profit from the sale of the property constituted a partnership or joint venture, however the Bank acknowledges in its brief that if the partnership has agreed to remunerate a partner for his services, his status as a partner does not preclude maintenance of a claim for services he has rendered, and the claim is not barred by 34-56(f) C.G.S. Though the precise relationship of the plaintiffs and Vandever from September 1987 to May 1988 is by no means clear, the court finds that there was an agreement by Vandever or the partnership to pay the plaintiffs for their work at Nash Street.
The Bank claims that the notation "VML, Inc." which appears on several invoices as the name of the customer buying materials for Nash Street indicates the existence of a separate business entity. The plaintiffs denied the existence of any such entity, and there are a variety of plausible explanations for the designation, including that the designation may have been invented by Vandever.
At any rate, this unexplained notation does not render invalid the lien of plaintiffs to recover for the work they performed under an agreement that they would be compensated.
The Bank has not established that the lien as to 83 Nash Street is invalid for any of the reasons it asserts.
The Plaintiffs' Claims on their Merits
150-152 Farren Avenue CT Page 747
Though the lien is invalid and may not be foreclosed, the plaintiffs may recover pursuant to Count Three of their complaint the reasonable value of their services pursuant to their agreement with Vandever. The evidence established that the agreement was that the plaintiffs were each to be paid $600.00 per week for their labor and were to be reimbursed for the materials they bought. They now seek to recover not in accordance with that contract but in quasi-contract for the reasonable value of their services, a value they calculate to be far in excess of their damages under the oral contract. Where a builder has contracted to perform a complete job for a stated price and suspends performance because of the other party's breach before the entire job is completed, he may elect to recover either on the basis of the contract or in quantum meruit the reasonable value of the labor and materials he furnished before leaving the job. Morici v. Jarvie, 137 Conn. 97, 101-102 (1950). According to their own testimony, however, the plaintiffs had no lump sum contract for the work but had agreed to work for a weekly salary plus reimbursement for materials. Though plaintiff Lee claimed that the parties revised the agreement in May or June 1987 to a rate of $150.00 per day, McKechnie testified that this daily rate applied not to Farren Avenue but to the new transaction regarding Nash Street. The court finds that the plaintiffs have proven that they were damaged to the extent of $6,200.00 in unpaid labor and $5,188.01 in unreimbursed expenses for materials as to the Farren Avenue project.
The plaintiffs are entitled to recover the sum of $11,388.01 from defendant Frank Vandever for their work at Farren Avenue.
83 Nash Street
As to this project, the oral contract between Vandever and the plaintiffs entitled each of them to payment in the amount of $150.00 for each day they worked on the renovations. The contract also entitled them to reimbursement for their expenses. This contract further provided that they would receive a share of any profits from the sale of the premises, however that event was not shown to have occurred, and the plaintiffs have not proven entitlement to damages for breach of that obligation.
The plaintiffs presented no time records, however, the court finds that from the amount of work described as having been completed, the plaintiffs must have worked six days per week from March 9, 1988 to May 25, 1988, as they claim to have done. Sixty-seven days at the rate of $150.00 per day equals $10,050.00, and the plaintiffs have each proved entitlement to recover that amount, or a total of $20,100.00 for labor. They expended $4,580.00 for materials and were paid, in total, $6,849.00 for the job. Accordingly, they have proved breach of their agreement and CT Page 748 entitlement to damages from defendant Frank Vandever in the amount of $17,831.00 as to Nash Street.
Union Trust argues that the plaintiffs are entitled to no recovery because they had no agreement with Vandever. This argument rests on testimony taken out of context. The impact of the plaintiffs' testimony was that there was no agreement that Vandever complied with, not, as the bank would have it, that there was no contract at all.
Remedies as to 83 Nash Street
Union Trust argues that the plaintiffs' mechanic's lien as to 83 Nash Street does not have priority over the mortgage entered into on the date Frank Vandever acquired the property on March 28, 1988. The Connecticut Supreme Court has held that the lien of a builder who performs services to a party who is not yet the owner of the premises for the benefit of which the services are performed does not have priority over a mortgage given at the time the grantee takes title. Bridgeport People's Savings Bank v. Palaia, 115 Conn. 357 (1932). The Court did not declare the mechanic's lien in Palaia, supra, to be invalid in toto, but held that the right to file a lien, and, hence, the lien, did not attach until after purchase, so that the lien in such a circumstance is seen to have originated after the transaction in which the grantee acquires the property, including the mortgage, and is properly seen as originating after the mortgage.
In Gruss v. Miskinis, 130 Conn. 367, 370-71 (1943), the Supreme Court explained that in Palaia it had held that a lien could arise before transfer of the property if the grantee had, at the time of his contract with the lienor, a specific or implied authority to encumber the land before title passed. The evidence herein did not establish that Vandever had any such right at any time until he acquired title as grantee.
The court finds that the plaintiffs' lien is subordinate to the purchase money mortgage of Union Trust.
Fraudulent Conveyance
By quitclaim deeds dated June 13, 1988, Frank Vandever conveyed his interest in 150-152 Farren Avenue, 83 Nash Street and certain land in Guilford to his wife, defendant Cheryl Vandever. The plaintiffs claim that these conveyances should be set aside as fraudulent.
Pursuant to 52-552 C.G.S., in order to establish that a conveyance is fraudulent and should be treated as void as to those to whom the grantor owes money, a plaintiff must establish that CT Page 749 the conveyance was made with actual intent to avoid a debt or duty or that it was made without any substantial consideration by a person who was or would be thereby rendered insolvent. Molitor v. Molitor, 184 Conn. 530, 536 (1981); Town Bank Trust Co. v. Benson, 176 Conn. 304, 307, 407 A.2d 971 (1978). A person is insolvent for these purposes when he is unable to pay his then-existing debts. Molitor v. Molitor, supra, at 536; Town Bank and Trust Co. v. Benson, supra, at 307; Boiselle v. Rogoff, 120 Conn. 635,643, 13 A.2d 753 (1940); Patrocinio v. Yalanis, 4 Conn. App. 33,36-37 (1985).
The deeds at issue recite that the transfers were made without consideration, and the history of the plaintiffs' transactions with Frank Vandever indicate that he was not paying his debts. He had made comments to the plaintiffs to the effect that he was in a "financial mess," and he had repeatedly told them he lacked money to pay them or, ultimately, the siding contractor.
Proof of fraud, however, requires proof not simply by a preponderance of the evidence, rather the burden of persuasion requires, in such instances, a "reasonable belief that the facts asserted are highly probably true [or] that the probability that they are true. . .is substantially greater than the probability that they are false." Patrocinio v. Yalanis, supra, at 36. Clear and convincing proof is required. Kavarco v. T.J.E., Inc., 2 Conn. App. 294,296, 478 A.2d 257 (1984); Clark v. Drska, 1 Conn. App. 481,487, 473 A.2d 325 (1984).
This court has had occasion to find some of the plaintiffs' statements not to be credible, and it is mindful that the evidence concerning Frank Vandever's ability to pay his debts came solely from plaintiffs who knew that Vandever could not attend the trial and that his wife, Cheryl Vandever, was out of state and did not in fact manage to attend the trial. The court notes that, according to the plaintiffs, Vandever was declining to pay them anything whatever for a substantial period, however, upon cross examination the plaintiffs acknowledged that he had in fact made out many checks to them in connection with Farren Avenue. Vandever kept his real estate in his own name throughout his transactions with the plaintiffs, and the timing of his transfers did not coincide with McKechnie's last meeting with him on May 26, 1988 and did not occur until some weeks later, when he was being prosecuted for murder. It is entirely plausible that a man in that situation might transfer his property to his wife so that she could control it during his pretrial or post-trial conviction incarceration. While the evidence as to this prosecution was obviously not developed in detail at trial, the presence of so extraordinary an event as an explanation of the transfers, coupled with the court's reservations concerning the plaintiffs' credibility, lead the court to conclude that clear and convincing CT Page 750 proof of fraud, either actual or constructive, has not been presented.
While the Appellate Court has ruled that insolvency may be determined either by assessing whether a person's debts exceed his assets or by examining his "income stream", Patrocinio v. Yalanis, supra, at 36-37, the plaintiffs have not presented proof as to either test, and the comments and behavior of Vandever which they cite are as inconsistent with mere unwillingness to pay as it is with actual inability to pay.
The plaintiffs have failed to discharge their burden of proof as to any of their claims of fraudulent conveyance. Accordingly, the court has dismissed these claims pursuant to 302 P.B. upon the plaintiffs resting their case.
Conclusion
Judgment shall enter in favor of the plaintiffs to recover from the defendant Frank Vandever the sum of $11,388.01 as to Count Three of their complaint in Docket No. 278073; however, their claim for foreclosure is denied as the lien is ordered discharged as untimely filed.
A competent real estate appraiser testified that the value of 83 Nash Street is $60,000.00, and the court has found a debt to the plaintiffs in the amount of $17,831.00. The purchase money mortgage of Union Trust, in the original amount of $70,000.00, has precedence over the debt to the plaintiffs. The plaintiffs shall prepare a proposed judgment file setting law days for all such encumbrances in inverse order of their priorities and present this judgment file to the court by August 15, 1990.
As to Count Four, judgment shall enter in favor of the plaintiffs to recover $17,831.00 from defendant Frank Vandever.
As to all claims against defendant Cheryl Vandever in Docket No. 278073 and as to Docket No. 274532, the claims against defendant Cheryl Vandever have been dismissed, and judgment shall enter in her favor.
BEVERLY J. HODGSON, JUDGE