[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 6581-R
This is an action brought in five counts, per substituted complaint, by the plaintiff against the defendants Eliot F. Morrison and his wife, defendant Jacqueline B. Morrison. Although not so labeled, the first four counts are directed against the defendant Eliot F. Morrison and the fifth is directed against the defendant Eliot F. Morrison and the defendant Jacqueline Morrison, claiming a fraudulent conveyance by defendant Eliot to his wife defendant Jacqueline of property known as 5 Field Road, Danbury, Connecticut.
The parties filed a stipulation of facts, dated June 10, 1993, stipulating that the Field Road property was held in joint ownership with survivorship of the defendants since the date of August 13, 1969. See stipulation attached hereto, marked A for reference in this decision. The Field Road property is the home of Mr. Mrs. Morrison.
The underlying claim involves two contracts concerning the purchase and sale of real estate. The plaintiff was the owner of real estate in Hartford known as and located at #48-152 Franklin Avenue. By contract dated September 9, 1988 the plaintiff and the defendant Eliot agreed that the plaintiff would transfer the Franklin Avenue property and $465,000 to the defendant Eliot in exchange for the defendant Eliot transferring to the plaintiff property in Hartford known as and located at #225 Locust Street, Hartford.
The Locust Street property was not owned by the defendant Eliot. It was owned by Salvatore G. Milazzo and Rosalie Milazzo. On September 16, 1988, seven days after the above agreement of the parties, the defendant Eliot entered in an CT Page 6581-S agreement with the Milazzos to purchase the Locust Street property for $750,000. The plaintiff was not a party to that agreement.
Both of the closings were to take place at the office of the plaintiff's attorney on November 1, 1988. The transactions are referred to by the parties as a Tax Free Exchange. On November 1, 1988, the defendant Eliot was unable to complete the transactions as he was unable to raise the additional $285,000 which were needed, in addition to the promised sum of $465,000 from the plaintiff, to close on the Locust Street property.
Count one and count three of the substitute complaint claim damages, arising out of the contract between the plaintiff and the defendant. The first count claims general damages. The third count claims damages by virtue of the plaintiff's loss of his ability to defer federal and state capital gains taxes because of the failure of the Tax Free Exchange transaction.
The second count claims that the plaintiff was "a third party beneficiary" of the contract between Eliot and the Milazzos, and hence that the plaintiff sustained damages in some unspecified fashion. The fourth count claims that, in anticipation of his eventual ownership, the plaintiff expanded sums of money in renovating 255 Locust Street, by license of the Milardos, and hence he felt economically compelled to purchase 255 Locust Street, directly from the Milardos.
The plaintiff, in his "Offer of Proof" dated October 3, 1990, claims that "since the time of the signing of said agreements, on or about September 9 and 16, 1988" the value of 148-152 Franklin Avenue has decreased $100,000.00 from the contract price; that he lost $36,000 in being unable to defer Capital Gains Taxes; that he lost $12,500 in expenses (taxes, insurance, electricity, natural gas) by retaining the Franklin Avenue property; and that his closing costs (attorneys fees and the like) for purchasing 255 Locust Steet [Street] were $31,180.95. He also claims to have had to finance an additional mortgage, which cost him $46,008.00. He does not claim that his Franklin Avenue property had a fair market value of less than the sale price.
The parties stipulated that "the provable damages of the plaintiff in this case are at least $85,000.00." The court does not pass on the viability of each of the damage claims, nor did the parties attempt to distinguish between what aspects of the CT Page 6581-T damage claims were or were not appropriate.
The reason for not joining issue as to the composition of the damage claim is that the defendant Eliot, substancially [substantially] subsequent to November — December 1988 became bankrupt. It is represented to the court that his discharge in bankruptcy took place in April 1992. This court, O'Neill, J., had granted a pre-judgment remedy attachment on the Field Road home on October 9, 1990 in the amount of $85,000.
On December 16, 1988, the defendant Eliot had transferred his undivided one-half interest in the Field Road home to the defendant Jacqueline. By virtue of the bankruptcy the plaintiff's claim against Eliot is limited to the extent of the amount of the attachment, $85,000. The viability of the attachment is dependent upon the plaintiff prevailing upon his claim, in the fifth count of the complaint, that the transfer by Eliot of his undivided one-half interest in the Field Road property was a fraudulent conveyance.
"To prove that a conveyance was fraudulent it must be shown either that the conveyance was made without any substancial [substantial] consideration and rendered the debtor unable to pay his existing debts, or that it was made with a fraudulent intent in which the grantee participated."
Rocklen v. Radulesco, 10 Conn. App. 271, 277.
". . . insolvency is not a necessary element of a fraudulent conveyance under Connecticut law if the second alternative is proved. . . ."
Rocklen v. Radulesco, supra, p. 278.
"If the second alternative is proved, then every conveyance made with the actual intent to defraud either present or future creditors is fraudulent as to both present and future creditors.
Rocklen v. Radulesco, supra, pp. 277, 278.
As to the second alternative, "fraudulent intent in which the grantee participated." "Fraudulent intent must be proved if at all by `clear, precise and unequivocal evidence'. . . . this CT Page 6581-U standard of proof applies to intra-familiar conveyances."
Tyers v. Coma, 214 Conn. 8, 11.
The first consideration for the court was whether the plaintiff has proven that "the conveyance was made without any substancial [substantial] consideration and rendered the debtor unable to pay his existing debts.
The court finds from the evidence that the transfer was made without any substancial [substantial] consideration. No funds were transferred between the parties nor is there any evidence of any other consideration.
The second factor of this "first consideration" is vigorously contested by the defendant. The court finds from the evidence that aside from the transaction between plaintiff and defendant the defendant Eliot Morrison was engaged in a number of real estate transactions. The ventures required that he pay principal and tax payments. On all of his obligations he and his partnerships were current on all such payments in December 1988. His income was adequate to pay all of his obligations as they became due.
As to his assets compared to his liabilities, although he had liabilities in excess of $1,500,000 he was the holder of mortgages on real estate which exceeded the balances owed on the notes. Additionally, he had stocks and bonds, an IRA account, and promissory notes due to him from other partners. His assets exceeded his liabilities.
Whether the court applies an "income stream test" (Patrocinio v. Yalanis, 4 Conn. App. 33, 37) or a balance sheet test (Bizzoco v. Chinitz, 193 Conn. 304, 312) the transfer of his interest in the house did not render him unable to pay his debts.
Lastly, as concerns this "first consideration" the plaintiff claims that the transfer of the house by the defendant Eliot to his wife deprived the defendant of the ability to pay the plaintiff $285,000 in accomplishment of the "Tax Free Transfer." What the plaintiff overlooks in this contention is that had the Tax Free Transfer been accomplished the defendant would have owned a property which would presumably be the exact equivalent of the sums spent or debt incurred to obtain the CT Page 6581-V property. This is presumably the nature of a Tax Tree Exchange, exchanging an asset for an asset of equivalent value, hence allowing the tax basis of the exchanged property to be transferred to the acquired property because of the equivalency of the transfer.
The court is not prepared to entertain a supposition that an exchange is equivalent for Federal and State Income Tax purposes, and non-equivalent when a rejection of that declaration by the declarant would serve his financial aspirations in litigation. Furthermore, the plaintiff does not contend in the complaint, in the evidence or in any documentation, that the sales price of the property was greater than its fair market value at the time of the scheduled closing. There is no claim whatsoever for such damages, nor any evidence to indicate that any such difference existed. The net result of the balance sheet would have remained the same, pre-sale and post-sale.
Further, there is no evidence to indicate that if the plaintiff could have obtained financing the income flow from the property would have been not sufficient to meet the carrying charges of the property.
The plaintiff has failed to meet his burden of proof by any standard that the transfer of the Field Road property rendered the defendant Eliot Morrison unable to pay his existing debts.
As to the second criteria, to wit "made with fraudulent intent in which the grantee participated." The court finds that the plaintiff has failed to meet his burden of proof by "clear, precise and unequivocal evidence" that the transfer was made with fraudulent intent. The fact that the defendant became bankrupt several years after the transfer to his wife is totally inadequate to as much as allow an inference that the defendant Eliot intended to defraud anyone. There is no evidence to that effect. To the contrary, the factors which led to the demise of the economy were unpredicated and unpredictable to even the most sophisticated investors throughout the region. The rental market collapsed in 1990-1991.
Further, the record is devoid of any evidence that the grantee of the transfer, the defendant's wife, "participated in the transfer with any intent to defraud." CT Page 6581-W
Petrocinio v. Yalanis, 4 Conn. App. 33, 39.
Not only was the defendant Eliot asked no questions concerning any motive or intent in the transfer to Jacqueline, he was not as much as asked if she even knew of the transfer. The defendant Jacqueline Morrison was in the courtroom for both days of the trial. She was not called to testify. There is no evidence whatsoever to indicate whether she knew of the transfer, let alone whether she participated in any transfer. The court cannot invent a motive of fraud where none exists in the evidence.
Skinner v. Skinner, 154 Conn. 107, 109.
The court finds that the plaintiff failed to prove that the transfer was made with a fraudulent intent in which the grantee participated.
Per the stipulation of the parties, the court enters judgment for the plaintiff against the defendant Eliot Morrison on counts one, two, three and four of the complaint in the amount of $85,000. The court enters judgment for the defendant Eliot Morrison on count five of the complaint. The court enters judgment for the defendant Jacqueline Morrison on counts one, two, three, four and five — on all counts — of the complaint.
L. P. Sullivan, J.