[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs Susan H. Darrah-Wantz and Louis F. O'Brien have brought the subject action against the defendants, Samuel A. Brown and Cardinal Ridge Investments, Inc. alleging that the defendant Samuel A. Brown fraudulently conveyed the property located at 38 Cartbridge Road in Weston, Connecticut to the defendant Cardinal Ridge Investments, Inc. and seeking to have the court void the transfer of the property. The plaintiffs assert an interest in the property at 38 Cartbridge Road pursuant to a prejudgment attachment obtained from the United States District Court in an action brought by the plaintiffs against Samuel A. Brown for alleged fraudulent and unlawful sales of unregistered securities. Darrah-Wantz, et al. v. Brown, et al,
United States District Court, District of Connecticut, 91 CV00071, (September 16, 1991).
As part of the underlying state court action, the plaintiffs recorded a notice of lis pendens on the land records for the property at 38 Cartbridge Road in Weston, Connecticut. The defendants have filed the instant amended motion to discharge the lis pendens.
According to General Statutes § 52-35b, the plaintiffs have the burden of proving that there is probable cause to sustain the validity of their claim. The standard of probable cause does not CT Page 776 require this court to decide whether the plaintiffs have proven their case by a preponderance of the evidence. McCahill v. Townand Country Associates, Ltd., 185 Conn. 37, 39 (1981), or in this instance, since fraud is alleged, by clear and convincing evidence. See also Williams v. Bartlett, 189 Conn. 471, 483
(1983). "The court, vested with broad discretion, need determine only the likely success of the plaintiff's claim by weighing probabilities". Tyler v. Schnabel, 34 Conn. App. 216, 219 (1994). "Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action." Vandersluis v. Weil, 176 Conn. 353,356 (1978).
The plaintiffs seek to set aside the conveyance on the grounds that it was fraudulent. A fraudulent conveyance must be proven by clear and convincing evidence. Tessitore v. Tessitore,31 Conn. App. 40, 43 (1993). See also Patrocinio v. Yalanis,4 Conn. App. 33, 35-36 (1985). Therefore, to preserve their lis pendens, the plaintiffs must show that there is probable cause to believe that they can prove by clear and convincing evidence that the conveyance by the defendant Samuel Brown to the defendant Cardinal Ridge Investments, Inc. was fraudulent.
A party endeavoring to prove that a conveyance was fraudulent must show either that: (1) the conveyance was made without substantial consideration and rendered the transferor unable to meet his or her obligations; or (2) the conveyance was made with fraudulent intent in which the grantee participated. Tyers v.Coma, 214 Conn. 8, 11 (1990). See also Zapolsky v. Sacks,191 Conn. 194, 200 (1983). The first test is commonly known as constructive fraud; the second test as actual fraud. Patriciniov. Yalanis, supra, 4 Conn. App. 35. The plaintiffs need not satisfy both tests, proving one or the other is sufficient.
The plaintiffs here have demonstrated probable cause to believe that the transfer of 38 Cartbridge Road, Weston, Connecticut by the defendant Samuel Brown to the defendant Cardinal Ridge Investments, Inc. was fraudulent. Although not required to do so, the plaintiffs have satisfied both tests for a fraudulent conveyance. They have provided sufficient evidence of constructive fraud and of actual fraud to establish reasonable grounds for a reasonable person to continue to prosecute this action.
At the hearing on the motion to discharge the lis pendens, CT Page 777 the plaintiffs established the following facts. On January 8, 1991, Brown purchased 38 Cartbridge Road, Weston, Connecticut from Richard Perlman for $465,000.00. The purchase was financed in substantial measure through a loan from Great Western Mortgage Company to Brown in the amount of $370,000.00. That same day, January 8, 1991, Brown conveyed the property to Cardinal Ridge Investments, Inc. At the time of the conveyance, Brown's daughter, Sarah DeHaven Brown, was the sole shareholder of Cardinal Ridge Investments, Inc. She was nine years old. Brown resides at 38 Cartbridge Road while his daughter lives there only occasionally.
At the time of the conveyance, the only assets of the corporation were a few dollars in a checking account. The real estate conveyance tax return for the transfer of 38 Cartbridge Road stated that no consideration was paid for the conveyance from Brown to Cardinal Ridge Investments, Inc. All of the funds used by Brown to purchase 38 Cartbridge Road came from one particular Union Trust account that Brown established under the name Samuel Brown as Trustee for Sarah DeHaven Brown. Brown placed the vast majority of his own funds into the account including all his earnings and the net proceeds from the sale of his former residence.
Under the test for constructive fraud, the plaintiffs must show that the conveyance by Samuel Brown to Cardinal Ridge Investments, Inc. was made without substantial consideration and rendered Brown insolvent. The plaintiffs presented compelling evidence that the conveyance was made without substantial consideration. The real estate conveyance tax return filed by Brown stated no consideration was paid. The tax return is supported by Brown's own testimony that the entire purchase was financed with funds from the Union Trust bank account into which Brown had deposited the bulk of his own funds. No credible testimony was heard by this court that this fund contained any money from Brown's daughter. Brown was also very vague in the particulars of his assertions that his daughter provided consideration for the conveyance.
The plaintiffs have also shown that the conveyance of 38 Cartbridge Road rendered Brown unable to meet his obligations. Up until approximately August 1990, the defendant Brown had been employed by Colonial Realty selling real estate investments. At that time, the defendant terminated his employment with them. Brown's income could be expected to decrease sharply and it did. CT Page 778 Brown's income tax return shows that his net business income for 1990 was approximately $99,000.00. His income tax return for 1991 indicates that his net business income fell to approximately $8,000.00.
While his income dropped dramatically, his expenses did not. He continued to have substantial ongoing expenses, including $30,000.00 for alimony annually, $36,000.00 in yearly mortgage payments and $17,000.00 in expenses for a condominium in Massachusetts. As a result, throughout 1991, Brown admitted that he had a negative cash flow. Brown also had significant debts, including a $370,000.00 mortgage for 38 Cartbridge Road and $52,000.00 owed on two other loans.
There is no particular test for determining whether a conveyance leaves a grantor unable to meet his financial obligations. See Patrocinino v. Yalanis, supra, 4 Conn. App. 37. The court is free to choose among various measures of the defendant's solvency and pick the one appropriate under the facts of this case. "Our courts do not . . . adhere rigidly to any single measure of insolvency, but use both the balance sheet test, the income stream test, or a combination of both." Id., 38.
The defendant Samuel Brown's insolvency after the transfer of 38 Cartbridge Road is apparent. He knew he no longer had the job that served as his primary source of income. Yet, he proceeded to purchase the property at 38 Cartbridge Road, incur a mortgage of $370,000.00, and transfer the substantial asset he had acquired to his daughter's corporation. This transfer, in light of his dramatically reduced income, rendered him unable to pay his large and ongoing obligations. See Molitor v. Molitor, 184 Conn. 530,537 (1981). The defendant himself admitted that he had a negative cash flow after the conveyance in 1991.
In light of the above, Brown was clearly insolvent under the income stream test. The plaintiffs also offered substantial evidence that Brown was insolvent under the balance sheet test as he had conveyed his primary asset, 38 Cartbridge Road, and he had not reduced his liabilities, including the $370,000.00 mortgage on Cartbridge Road and other loans.
The plaintiffs also established probable cause to believe that the defendant Brown engaged in actual fraud in the conveyance to Cardinal Ridge Investments, Inc. To determine whether Brown actually intended to defraud creditors through the CT Page 779 conveyance of the property, one must look at the facts and reasonable inferences from those facts. Matthews v. Converse,83 Conn. 511, 514-15 (1910). Direct evidence that a conveyance was made with a fraudulent intent is seldom available. The court must search for "indicia or badges of fraud." Wilcox v. Johnson,127 Conn. 539, 542 (1941). See also Zabolsky v. Sacks, supra,191 Conn. 200.
The plaintiffs also need not prove that the defendant Brown intended to defraud the plaintiffs in this case by transferring the property. "There is no requirement that the transferor's intent to defraud be directed against any particular person. Our courts have long held that `since every person is conclusively presumed to intend that the natural and necessary consequences of his acts', if he makes a fraudulent conveyance with specific intent to avoid the debt of one with the necessary effect of avoiding it as to another, the conveyance is fraudulent as to the latter debt as well." (Citations omitted). Rocklen, Inc. v.Radulesco, 10 Conn. App. 271, 278 (1987).
Facts which constitute strong evidence of fraudulent intent on the part of Brown include the following: (1) the transfer of the property was to a corporation in which his daughter, who was only nine years old at the time, was the sole shareholder; (2) Brown and the only other shareholder in the corporation transferred their shares in the corporation to Brown's daughter only days before the conveyance; (3) Brown retained control of the property and resided there, while his daughter only occasionally did so; (4) Brown received no consideration for the conveyance; and (5) the transfer was made after he had recently ended his job and it left him insolvent.[1]
Most telling, the defendant Brown unequivocally admitted in testimony before this court that he was capable of engaging in fraud to deceive his creditors. In an effort to explain away the real estate conveyance tax return form which stated that no consideration was paid for the transfer to Cardinal Ridge Investments, Inc., Brown stated that consideration was paid and that the form was falsely completed in an attempt to "beat" the Town of Weston out of the conveyance tax. While this court does not credit this testimony for the truth of the matter asserted, Brown's statement does reveal a candid willingness to engage in fraud.
The reasonable inference the court draws from these facts is CT Page 780 that Brown fraudulently intended to convey his most substantial asset so that it could not be reached by present and future creditors.
There is also probable cause to believe that Cardinal Ridge Investments, Inc. participated in the fraudulent transfer. Brown's daughter was the sole shareholder of the corporation. Since she was a minor, Brown controlled the actions of the corporation, obstensibly on her behalf. Since Brown acted on behalf of the corporation in making the transfer and since he acted with a fraudulent intent at the time, his fraudulent intent and his knowledge of the fraud can and should be imputed to the corporation. See Clark v. Fuller, 39 Conn. 238 (1872).
The defendants claim that the plaintiffs are not a creditor of the defendant Brown for purposes of the Fraudulent Conveyance Statute because the conveyance was made prior to the federal court litigation being filed by the plaintiffs. The defendants' claim is erroneous.
The Fraudulent Conveyance Statute, General Statutes § 52-552, applies to any "debt or duty." Our courts have long held that the fact that a law suit was brought after the conveyance does not mean that no debt or duty was owed to the plaintiffs at the time of the alleged fraudulent conveyance. It is sufficient that the plaintiffs allege that the conveyance was made with the fraudulent intent to avoid the claim upon which this suit was based. Matthews v. Converse, 83 Conn. 511, 515 (1910). See alsoMurphy v. Dantowitz, 124 Conn. 320, 324-25 (1955).
Moreover, even assuming that the plaintiffs were future creditors and not existing creditors at the time of the conveyance, the conveyance still may be set aside as to them. The plaintiffs have produced evidence of an actual fraudulent intent on the part of Brown. If proven, the conveyance is fraudulent as to both present and future creditors. Rocklen, Inc. v. Radulesco,
supra, 10 Conn. App. 278.
The defendants also claim that the lis pendens should be discharged because the subject action does not affect an interest in real property. They assert that the underlying action is one for violation of securities law in which the plaintiffs may only obtain money damages and, as a result, it does not involve title to 38 Cartbridge Road. CT Page 781
General Statutes § 52-325(a) establishes the types of actions in which lis pendens are appropriate. It states, in relevant part, that "in any action in a court of this state . . . the plaintiff or his attorney, at the time the action is commenced or afterwards, . . . if the action is intended toaffect real property, may cause to be recorded in the office of the town clerk of each town in which the property is situated a notice of lis pendens. . ." (Emphasis supplied).
General Statutes § 52-325(b) defines actions intended to affect real property to mean "(1) actions whose object and purpose is to determine the title or rights of the parties in, to, under or over some particular real property; (2) actions whose object and purpose is to establish or enforce previously acquired interest in real property; (3) actions which may affect in any manner the title to or interest in real property, notwithstanding the real purpose of the action may be other than to affect the title of such real property."
The action before this court is one to set aside the transfer of real estate from the defendant Brown to the defendant Cardinal Ridge Investments, Inc. on the grounds that it was a fraudulent conveyance. The action is intended to effect real property as that term is defined under either subsections (1) or (3) of General Statutes § 52-325(b).
The purpose of a notice of lis pendens is to inform potential buyers of real estate and creditors of its owners that title to the real property may be adversely affected by contemplated or pending litigation. Garcia v. Brooks Street Associates,209 Conn. 15, 22 (1988). Therefore, the filing of a notice of lis pendens is appropriate where the law suit will in some way, either directly or indirectly, affect the title to or an interest in the real property itself. Id. See also Corsino v. Telesca,32 Conn. App. 627, 63 (1993).
This action may effect the defendant Cardinal Ridge Investments, Inc.'s title to 38 Cartbridge Road in a very significant way. Its title to the property could be voided. The plaintiffs seek and, if successful, are entitled to set aside the transfer of the property by Brown to Cardinal Ridge Investments, Inc. Gaudio v. Gaudio, 23 Conn. App. 287, 302 (1990).
The subject action could also effect the defendant Brown's interest in the property. If Brown's transfer of the property to CT Page 782 Cardinal Ridge Investments, Inc. is set aside, the plaintiff could attach Brown's interest in the property. See Murphy v.Dantowitz, supra, 142 Conn. 325-326. In Corsino v. Telesca, the Appellate Court specifically upheld a trial court's ruling that the fraudulent conveyance action before it by seeking to set aside the transfer of real estate affected the title to or interest in real property for purposes of the lis pendens statute. Corsino v. Telesca, 32 Conn. App. 627 (1993).
Finally, the defendants' claim that the lis pendens statute, Connecticut General Statutes § 52-325 et. seq., violates the United States and Connecticut Constitutions because it does not provide for a pre-filing hearing or require a surety bond.
The Connecticut Supreme Court, in Kukanskis v. Griffith,180 Conn. 501 (1980), struck down § 52-325 as constitutionally deficient because the statute provided no notice to the property owner and no opportunity for a hearing, either before or after filing of the lis pendens. In response to the high court's decision, the legislature enacted Public Act 81-8 which amended § 52-325 et. seq. by requiring notice to the property owner and authorizing a post-filing hearing.
In Williams v. Bartlett, 189 Conn. 471 (1983), the Connecticut Supreme Court upheld the constitutionality of the revised lis pendens statute. The court specifically held that the lack of a pre-filing hearing and a bonding provision in General Statutes § 52-325 did not violate the due process clause of the Fourteenth Amendment or Article First, 10 of the Connecticut Constitution. The court utilized the three part test outlined by the United States Supreme Court in Matthews v. Eldredge, 424 U.S. 319,334, 96 Sup. Ct. 93 (1976) in determining that due process requirements were satisfied.
This court does not share the defendants' view that the United States Supreme Court's decision in Connecticut v. Doehr,501 U.S. 111 Sup. Ct. 2105, 115 L.Ed.2d (1991) undermines the Connecticut Supreme Court decision in Williams v. Bartlett. InDoehr, the court held Connecticut's prejudgment attachment statute unconstitutional because it failed to provide for a pre-deprivation hearing. A lis pendens is a creature very different from a prejudgment attachment. "The filing of such notice will have an effect upon the defendant's ability to alienate the property, or to obtain additional security on the basis of title to the property, but the effect of the lis pendens is simply to CT Page 783 give notice to the world of the remedy being sought in the lawsuit itself. The lis pendens itself creates no additional right in the property on the part of the plaintiff but simply allows third parties to know that a lawsuit is pending in which the plaintiff is seeking to establish such a right." Connecticutv. Doehr, supra, 501 U.S. 29 (Rehnquist, C.J., concurring). Moreover, in this case, a post filing hearing is particularly appropriate because of the existence of exigent circumstances. The plaintiffs have alleged that the defendants have sought to defraud them by placing property out of their reach as creditors. Any delay in filing a notice of lis pendens caused by the need for a pre-filing hearing would jeopardize the plaintiff's ability to attach the property.
The Superior Court, DeMayo, J., in Wallingford Staffordshirev. Staffordshire, 42 Conn. Sup. 241 (1992) held that General Statutes § 52-325 was not unconstitutional in light of Connecticut v. Doehr. This court agrees with that comprehensive and well reasoned opinion. See Wallingford Staffordshire v. Staffordshire,42 Conn. Sup. 241 (1992).
The defendants' motion to discharge the lis pendens is denied.
JON ALANDER, JUDGE