[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON REMAND
This is an action for dissolution of marriage and for other relief brought to the Superior Court in the Judicial District of New London at Norwich. A judgment dissolving the marriage and granting certain other relief as the record appears was entered on December 27, 1988. The case was thereafter appealed and the Appellate Court reversed and remanded the case for further proceedings (see 20 Conn. Appellate 551).
The plaintiff's amended complaint also alleges:
 2. On November 3, 1987, the defendant, David P. Watson, in an attempt to prevent the court from having jurisdiction over the marital property and in an attempt to defraud the plaintiff, transferred the property known as 175 Krug Road, in the Town of Preston, County of CT Page 3153 New London, and State of Connecticut, to the defendants, Leslie Anne Watson and Heidi Lynn Watson. Said transfer was made without adequate consideration and with the intention to prevent it from being transferred to the plaintiff as marital property and with the intent of thereby defrauding the plaintiff.
 3. The conveyance deprived the defendant, David P. Watson, of sufficient means to satisfy his obligations to the plaintiff.
Between the date of the evidentiary hearing before this Court and the date counsel for the parties filed briefs, the decision of Sunbury v. Sunbury, 216 Conn. 673
(December 29, 1990), was released.
Sunbury held that in the absence of any exceptional intervening circumstances occurring in the meantime, the date of the granting of the divorce would be the proper time as of which to determine the value of the estate of the parties upon which to base the division of property even where the matter is heard on remand. This Court reads the decision in Sunbury as holding that the date of the granting of the original divorce is the proper date to apply for determining all of the statutory mandated criteria on the issue of property assignment (Section 46b-81), alimony (Section 46b-82), and support (Section 46b-84). While both the plaintiff and the defendant submitted evidence relating to assignment of property, alimony and support as of the date of the hearing before this Court, this Court will only consider the issue of assignment of property, alimony and support based on the statutory criteria as of the date of the granting of the original divorcee degree since there is an absence of any exceptional intervening circumstances.
By way of relief, the plaintiff claims (1) a dissolution of the marriage; (2) custody and support; (3) alimony; (4) exclusive possession of the family premises; (5) division of the marital assets; (6) damages; (7) that the conveyance made by the defendant to the minor children Leslie Anne Watson and Heidi Lynn Watson be declared null and void as to the plaintiff; and (8) such other relief as in law or equity may pertain.
The defendant, in his cross complaint, claims (1) a decree dissolving the marriage; (2) custody; (3) support; (4) assignment of all or part of the estate of the plaintiff; (5) CT Page 3154 exclusive use and occupancy of the family residence located at 175 Krug Road, Preston, Connecticut; (6) a division of the marital assets; and (7) such other relief as to which the defendant may be entitled in law or equity.
In the remand order, the Court in Watson v. Watson, stated at page 557 in part as follows:
 Having concluded that the trial court's award of non-modifiable limited periodic alimony was logically inconsistent with the facts found by it, we must remand this case to the trial court. We cannot properly limit our remand to the issue of periodic alimony. The issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other.
The remand by the Appellate Court is as to all financial orders, but is not as to the decision dissolving the marriage.
Many of the facts that are underlying in this case are not in dispute. The plaintiff, whose maiden name was Loretta Bertrand, and the defendant were married at Cranston, Rhode Island, on June 26, 1971. There are three minor children issue of the marriage, Leslie Anne Watson, born March 11, 1972, Heidi Lynn Watson, born July 13, 1973 and Amy Beth Watson, born October 29, 1975.
A. ADDITIONAL FACTS
Plaintiff graduated college in June 1970 and was employed as a school teacher in the State of Rhode Island following her graduation from college. She continued working in that capacity as a school teacher until the birth of the oldest child, Leslie Anne Watson. She left her Rhode Island school employment on maternity leave and has not since returned to teaching. She does not have a Connecticut teaching certificate and as of December 27, 1988, cannot teach in the State of Connecticut. She would have to take college-level refresher courses in order to pass a Connecticut test to qualify her to teach in the State of Connecticut. Title to the approximate one-acre tract of land upon which the family home now exists was conveyed to the defendant David P. Watson by his parents on March 27, 1973. The deed was not recorded until CT Page 3155 February 19, 1980. The plaintiff and the defendant resided in a mobile home near the family home for approximately three years during which time the family home was constructed. The plaintiff cashed in her pension plan that she acquired while teaching in Rhode Island in order to purchase exterior shingles for the home. She had also saved approximately $14,000 during the marriage and that money was also used in the construction of the family home. Plaintiff also worked in the construction of the family home in the staining of floors, wallpapering, and painting of subflooring. The defendant, his father and his uncle did most of the actual construction work in building the family home. Much of the material for the construction of the family home was donated by the defendant's father. The youngest child in the marriage, Amy, has been diagnosed as autistic. She requires constant care and is a danger to herself. When Amy was approximately age two-and-a-half, the Town of Preston started to pay the plaintiff $35 per day in order to transport Amy to Manchester, Connecticut. This transportation of Amy to Manchester, Connecticut, continued for almost seven years. The plaintiff commenced cleaning homes in Manchester during this seven-year period rather than return home from Manchester after bringing Amy there and then returning to Manchester in order to bring Amy home later in the day. In 1985, after caring for Amy for approximately ten years, it was decided to place her in a private school known as Benhaven. Amy is one of the most destructive children at school and at age fifteen is still not toilet trained. Amy has been institutionalized since 1985.
As shown on her December 20, 1988 financial affidavit, the plaintiff earns a net of $157.50 per week cleaning houses. She has cleaned homes for an approximate ten-year period from approximately 1978 to December 1988.
The plaintiff has osteoarthritis of her knees. On November 12, 1986, she had a total knee replacement and now has an artificial joint in her left knee.
The plaintiff's December 20, 1988 affidavit showed assets totaling $1,760.38 and liabilities totaling $1,135. She did not list any real estate on that affidavit.
The minor child, Heidi, attends St. Bernard's School.
The plaintiff is also the beneficiary of a trust fund established in 1984.
The plaintiff also receives Social Security benefits for the benefit of Amy. CT Page 3156
During the entire time of the marriage, the defendant was the only full-time employee on his parents' dairy farm. He worked seven days a week in excess of twelve hours per day. The parties never took a vacation in seventeen years of marriage and the defendant only took four to five days off from work during the seventeen years of marriage. When the parties initially married, the defendant had a take-home pay of $30 per week. This lasted for approximately one year. His take-home pay was then increased to $60 per week for a two-year period and was then increased to $80 per week for approximately one-and-a-half years. His take-home pay was then increased to $200 weekly for approximately two years and was then increased to $250 weekly during the period of approximately 1982 through 1985. His weekly take-home pay was then increased to $362.17 which it continued at up to the time of the December 20, 1988 hearing. The marriage was always a difficult one insofar as finances were concerned. For a period of five to six years between 1972 and 1981 or 1982, the parties received food stamps from the Town of Preston. The defendant's work schedule was such that he commenced work at home at approximately 9:00 p.m. That was his schedule for six days a week. On Sunday, his work schedule was the same, except for a four-hour period during the afternoon that he would be at home. The defendant did not have any social life outside of his home. The plaintiff, on the other hand, was involved in some church activities during the marriage. The defendant attended Mitchell College in New London, Connecticut, between approximately 1961 to 1964 where he received a degree in science of engineering. This is a pre-engineering degree that is a type of two-year associate's certificate. The defendant's December 20, 1988 financial affidavit shows net weekly wages of $362.17. It shows personal property valued at $5,000, stocks valued at $1,062.50, and various real estate interests. His financial affidavit dated December 20, 1988, lists four separate real estate holdings consisting of the following:
 a. #16 Rude Road house 3 acres — 1/5 interest. (Given by father with the understanding that father has life use and defendant will pay father $5,000 per year for ten years beginning 1/90.
 VALUE: $82,193 less 4/5 interest ($65,754.40) Equity $16,438.60.
 b. South Long Road — 1/2 interest (inherited from aunt in 1946, 25 years prior to marriage).
VALUE. $156,000 (less 1/2 interest $78,000) Equity $78,000 CT Page 3157
 c. Rude Road Farmland — VALUE: $100,000 less 4/5 ($80,000) Equity $20,000.
 d. Lewis Road, 61 acres — 1/2 interest (gift from father with the understanding that he has life use) VALUE: $146,400. Equity $146,400.
All property listed above is held with other family members
The various real estate holdings of the defendant as of December 27, 1988, are hereinafter referred to as the family home, the Frink Farm, the Woolworth Farm, and the South Long Pond property. The parties are in agreement that the value of the family home on Krug Road as of December 20, 1988 was $160,000. The parties are in further agreement that the value of the Frink Farm as of December 20, 1988 was $269,000. The parties are further in agreement that the value of the Woolworth Farm as of December 20, 1988 was $349,000. The parties are in dispute as to the value of the South Long Pond property. From the evidence presented, the Court finds that the value of that property as of December 20, 1988 was $156,000.
The Court has already reviewed the facts leading up to the acquisition of the family home on Krug Road. It is necessary to review the history of the Woolworth Farm, the South Long Pond property, and the Frink Farm.
A. THE WOOLWORTH FARM
The Court finds the following additional facts regarding that real estate.
The Woolworth Farm, consisting of approximately 208 acres, was acquired on January 23, 1987, for $150,000. The property was paid for by the defendant's mother and father and title was placed in the names of the defendant's mother, the defendant's father, the defendant and the defendant's two sisters. An agreement was entered into in February 1987 between all the parties whereby commencing January 1990, the defendant and each of his two sisters were each required to pay to the defendant's parents the sum of $5,000 each per year for a total of ten years until a total of $150,000 had been paid to the defendant's father, Philteus Watson, and the defendant's mother, Eleanor Watson, at which time the parents would remove their name from the deed.
The Court is aware of the fact that while the CT Page 3158 hearing on the remand was pending, that on March 9, 1990, the defendant conveyed his interest in the Woolworth Farm to his two sisters, claiming that he was unable to make the $5,000 payment due to his parents on January 23, 1990. Since the Court has determined that the proper time for valuing the assets of the plaintiff and defendant is December 27, 1988, it is not necessary to resolve the dispute between the plaintiff and the defendant as to whether that conveyance was a fraudulent conveyance.
B. THE FRINK FARM
The Court finds the following additional facts regarding that real estate.
This property consists of approximately 120 acres. The defendant's father and mother purchased the property in 1978 from Edward J. Frink and had the title transferred from Edward J. Frink directly to the defendant and his sister, Lucille Thoma. The defendant and his sister each own a one-half interest in the Frink Farm.
C. THE SOUTH LONG POND, LEDYARD PROPERTY
The Court finds the following additional facts regarding this real estate.
This property was acquired as a gift by the defendant and his sister, Lucille Thomas from their aunt in approximately 1938. The defendant and his sister each own a one-half interest in this property. The property is subject to a long-term lease of $60 per year which lease expires in approximately 1996.
I. THE CLAIMED FRAUDULENT CONVEYANCE
The requirements to set aside a conveyance as fraudulent and the burden of proof, as set forth in Tyers v. Coma, 214 Conn. 8, 11 (1990), is as follows:
The party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. Bizzoco v. Chinitz, 193 Conn. 304, 312, CT Page 3159476 A.2d 572 (1984); Zapolsky v. Sacks, 191 Conn. 194, 200,464 A.2d 30 (1983). The party seeking to set aside the conveyance need not satisfy both alternatives. Bizzoco v. Chinitz, supra . . . .
Whether the conveyance in question was fraudulent is purely a question of fact. Zapolsky v. Sacks, supra. Fraudulent intent must be proved, if at all, by "`"clear, precise and unequivocal evidence."' (Alaimo v. Royer, 188 Conn. 36, 39,448 A.2d 207 (1982))." J. Frederick Scholes Agency v. Mitchell,191 Conn. 353, 358, 464 A.2d 795 (1983). This standard of proof applies to intrafamilial conveyances . . . .
The Court finds the following additional facts regarding this claim.
On November 3, 1987, the defendant quitclaimed his interest in the family home to his two daughters, Leslie Watson and Heidi Watson, reserving unto himself and unto his wife, the plaintiff Loretta Watson, a life use in the premises conveyed. There was no consideration for that transfer. The defendant claims that he quit claimed the house to benefit and protect his children and to give his wife an interest in the real estate. Plaintiff testified that the defendant deeded the property after he had become aware of the fact that the wife intended to file for divorce. On March 9, 1990, the defendant executed a mortgage deed in favor of his parents encumbering the family home for $25,000. The plaintiff claims that this mortgage deed was executed to secure a debt owed to his parents.
In order to set aside the conveyance as fraudulent, the plaintiff has the burden of proving by clear, precise and unequivocal evidence that either (1) the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated.
The Court finds that insofar as the first alternative is concerned that the plaintiff has proven by clear and precise and unequivocal evidence that the conveyance was made without substantial consideration. However, the plaintiff has failed to prove that the transferor was rendered unable to meet his obligations as a result of the transfer. CT Page 3160 Therefore, the plaintiff has not met the first alternative required in order to set aside the conveyance. The second alternative is to prove that the conveyance was made with a fraudulent intent in which the grantee participated. The Court finds from the evidence presented that the conveyance in question was made with a fraudulent intent. However, the plaintiff has failed to prove by clear, precise and unequivocal evidence that the grantees participated in any fraudulent intent regarding the transfer. Therefore, the plaintiff has failed to prove the second alternative in order to set aside the conveyance as fraudulent.
The parties are in disagreement as to the cause of the dissolution of the marriage. Each party attributes to the other party the fault for the breakdown of the marriage. From the evidence presented, the Court determines that each party is equally at fault for the breakdown of the marriage.
In determining the issues of alimony, support, assignment of property, and payment of attorney's fees, this Court has carefully considered all of the relevant statutory criteria.
ORDER
The Court hereby enters the following orders:
(1) The defendant is ordered to convey by warranty deed to the plaintiff forthwith his life interest in the family home on Krug Road, free and clear of all liens and encumbrances subject only to the title in his two daughters, Leslie Watson and Heidi Watson, and the life interest in the plaintiff, Loretta Watson. All furniture in the family home is awarded to the plaintiff.
(2) The defendant is ordered to pay the plaintiff $75 per week as periodic alimony.
(3) The defendant is ordered to pay to the plaintiff as an allowance to prosecute the sum of $2,500 within six months of date.
(4) There is presently a balance due to counsel for the minor child the sum of $1,684. The defendant is ordered to pay that amount.
(5) All assets shown on the plaintiff's December 20, 1988 affidavit are awarded solely to the plaintiff, including her interest in the trust fund established in 1984. CT Page 3161
(6) Each party shall pay one-half of the liabilities shown on the plaintiff's financial affidavit dated December 20, 1988.
(7) The defendant is solely responsible for paying all liabilities shown on his December 20, 1988 financial affidavit, except for those liabilities that are also listed on the plaintiff's affidavit for which the Court has ordered that the parties pay equally. Those liabilities that are the sole responsibility of the defendant, the Court further orders that he hold the plaintiff harmless therefrom.
(8) Except for the family home on Krug Road, all other real estate owned by the defendant as shown on his December 20, 1988 financial affidavit is awarded solely to the defendant.
(9) The stocks and bonds shown on the defendant's financial affidavit are awarded solely to the defendant. Further, the 1973 lawn tractor shown on the defendant's financial affidavit is awarded to the defendant unless said lawn tractor is at the family residence as of December 20, 1988, in which event, it is awarded solely to the plaintiff.
(10) The defendant is ordered to pay to the plaintiff as support for Leslie and Heidi the sum of $40 per week per child. When Leslie reaches age 18, the support order for Heidi shall be automatically increased to $60 per week.
(11) No support order is entered for Amy. The plaintiff shall continue to receive and administer the social security award which is for the benefit of Amy. The defendant is to furnish medical insurance for the benefit of Leslie and Heidi and any unreimbursed or uncovered medical expenses are to be shared equally between the parties.
(12) Custody of Leslie and Heidi is awarded to the plaintiff with reasonable rights of visitation awarded to the defendant.
(13) The defendant is responsible for paying the full tuition costs for the benefit of Heidi at St. Bernard's School.
(14) A contingent wage execution is ordered.
(15) The defendant is ordered to pay appraisal fees in the amount of $1,000 within six months of date to the plaintiff.
(16) the defendant shall cooperate and execute any CT Page 3162 and all documents to enable the plaintiff to elect medical coverage under his medical insurance plan for the maximum period allowed or until the plaintiff becomes eligible for medical benefits under a medical coverage plan maintained by a future employer of the plaintiff, whichever occurs first. The cost for such coverage under the defendant's insurance policy shall be paid by the plaintiff. Any unreimbursed or uncovered medical expenses shall be the sole responsibility of the plaintiff. Any explanations of benefits for payments received by the defendant for claims made by the plaintiff shall forthwith be forwarded to the plaintiff.
AXELROD, J.