[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Federal Deposit Insurance Corporation as receiver of the Connecticut Bank and Trust Company, N.A. (FDIC or the plaintiff)[1] brings this action against the defendants Warren M. Tuggle (Tuggle), his ex-wife Jeanne A. Bousquet and his daughter Denyse Tuggle (transferees) to set aside a conveyance from Tuggle to the transferees as fraudulent. CT Page 7996-A
From the evidence, the court finds the following facts. In 1986, Tuggle was the laboratory director of United Laboratory Services, Inc. (United), a Connecticut corporation. He and three other individuals, Guasta, Mumblo and Eldridge, were the principal stockholders of United, and as such, issued individual personal guarantees[2] of loans made or to be made by CBT to United which first borrowed the sum of $100,000 from CBT evidenced by its note dated January 12, 1987. It negotiated a second loan of $25,000 evidenced by its note dated February 2, 1987. Some time after this, Tuggle sold his interest in United, and remained as an employee. He did not notify CBT of his sale nor did he attempt to terminate or limit his personal guarantee; however, he assumed the buyers would be responsible for any outstanding debt. United negotiated a third loan of $12,000 evidenced by its note dated January 13, 1988 to CBT. In connection with the October 24, 1986 guarantee, Tuggle furnished his personal financial statement to CBT (Plaintiff's Exhibit E). CT Page 7996-B
On or about January 29, 1988, CBT, claiming that United's notes to it were in default, commenced suit against United and its four principals, Tuggle, Guasta, Mumblo and Eldridge under their individual guarantees and obtained a prejudgment remedy of attachments of interests in real estate individually owned by Tuggle, Eldridge and Mumblo. The plaintiff obtained judgment in that case, Docket No. 89846 (New London Judicial District), in early 1989 against United and the four principals, including Tuggle, in the amount of $113,572.04, including principal of $92,032.98, interest of $10,487.32 and attorneys fees of $11,051.74 plus costs.
Discovering that its prejudgment attachment of Tuggle's real estate only affected an adjoining lot but not his home by reason of an error in the description, the plaintiff now seeks to set aside Tuggle's conveyance of his one-half undivided interest[3] in the home to his ex-wife and daughter, which deed was executed March 16, 1988, and recorded March 18, 1988, approximately six weeks after the prejudgment remedy papers were served on Tuggle (Plaintiff's CT Page 7996-C Exhibit I). The deed was without monetary consideration.
 I.
"The party seeking to set aside a conveyance as fraudulent bears the burden of proving[4] either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. . . . The party seeking to set aside the conveyance need not satisfy both alternatives. Whether the conveyance in question was fraudulent is purely a question of fact. . . . Fraudulent intent must be proved, if at all, by clear, precise and equivocal evidence. . . . This standard of proof applies to intrafamilial conveyances." Watson v. Watson, 221 Conn. 698, 707 (1992) (citations and internal quotation marks omitted).
In determining whether the plaintiff has satisfied either of these tests, by the applicable standard of proof, the court finds the following additional facts. Tuggle, at CT Page 7996-D least from 1986 and to the time of trial, continued to reside in the home, at 35 Cubles Drive, Niantic, Connecticut, which consists of two lots on a recorded subdivision map, lot Nos. 2 and 3. After the transfer of his one-half interest, Tuggle paid the taxes, insurance and all of the expenses of upkeep and maintenance for the dwelling without any contribution from either transferee. Nor did he pay either transferee any rent for the premises, or for use and occupancy after the transfer. Prior to the transfer, and after his divorce, he did not pay rent or use and occupancy to his ex-wife and paid all of the expenses relative to his home.
At the time of the conveyance, Tuggle, United and the other three principals were jointly and severally liable to CBT for approximately $145,000. On or about January 22, 1988, Tuggle completed and signed a personal financial statement on a CBT form at the behest of the new owners of United. (Plaintiff's Exhibit F). This financial statement shows no liabilities and assets of $144,000, consisting of the home valued at $120,000,[5] loans receivable of $4,000 and other personal property of $20,000. However, at the time of CT Page 7996-E the conveyance complained of here, Tuggle had other substantial assets not shown on Exhibit F; he owned jointly with his daughter 5,388 shares of EGG Corp., a company listed on the New York Stock Exchange. As of March 16, 1988, the stock had a high of $37 per share, a low of $36 3/8 per share, and as the parties agreed in oral argument, a per share value of $36.50 per share rounded off, which would make the total value of this stock approximately $196,600.[6]
Defendant's Exhibit 1, Tuggle's brokerage account statements with Donaldson, Lufkin Jenrette, although not specific for March 1988, do show that Tuggle acquired 4,788 shares of EGG on January 1, 1972, at a price of $41.77 per share and 600 shares on the same day at a price of $41.70 per share. The court infers from this exhibit and the confirmation slips showing sales of all of the shares on November 7, 1988 and December 6, 1988, that Tuggle had at least a one-half interest in 5,388 shares of EGG on March 16, 1988.
The plaintiff asserts that even if Tuggle had such a one-half interest in the stock, the conveyance was made without consideration and rendered Tuggle unable to pay his CT Page 7996-F obligations. The court agrees that the conveyance was made without substantial consideration, indeed it was made without any monetary consideration at all. However, the court disagrees with the plaintiff that Tuggle was thereby rendered insolvent or unable to meet his obligations.
To the contrary, Tuggle had control of $196,600 in marketable securities, or at a minimum, one-half thereof, or $98,300. He also had $24,000 in personal property as shown on his personal statement dated January 1988. He also had his interest in Lot No. 1, which was not valued as of the date of the conveyance. He also had his income of $35,000 per annum. Moreover, although he was jointly and severally liable for the debt to CBT of $145,000, he was also entitled to contribution, and perhaps indemnification, from the other three individual guarantors, for any of this debt that he paid, in excess of at least one-fourth thereof. He also was entitled to indemnification from United. The plaintiff has not shown what the value of Tuggle's claims against his co-obligors was as of March 16, 1988. In fact, the plaintiff was apparently able to obtain attachments of real estate CT Page 7996-G owned by both Eldridge and Mumblo, and was also able to recover a portion of its judgment from one or more of Tuggle's co-guarantors. On the state of this record, the court concludes that the plaintiff's proof has not met the first test by clear, precise and unequivocal evidence, that Tuggle was rendered unable to meet his obligations by the conveyance of his one-half interest to his transferees.
The court finds that Tuggle transferred his one-half interest in the premises to the transferees shortly after the prejudgment remedy proceeding was commenced and with actual notice of the proceeding with the intent to insulate his one-half interest from CNB's claim, but also finds that he was not insolvent, at that time, as he had a substantial net worth and income and was able to pay his then existing debts. Whether insolvency is to be determined by a net worth or "balance sheet" test or an "income stream" test, it is clear that Tuggle remained with sufficient assets and income to meet his existing obligations as they became due. See Patrocino v. Yalanis, 4 Conn. App. 33 (1985). The plaintiff has not met its burden of proving by clear, precise CT Page 7996-H and unequivocal evidence that the conveyance was fraudulent under the first test.
Turning now to the second test, the court must determine, having found that Tuggle acted with a fraudulent intent, whether the plaintiff has shown that the transferees participated in Tuggle's fraudulent intent. The plaintiff argues that the "indicia or badges of fraud" established by the evidence are sufficient to show that the transferees participated in Tuggle's fraudulent intent. The plaintiff points to, for example, the close relationship between Tuggle and the transferees, the lack of consideration for the conveyance, the conveyance occurring shortly after the commencement of CNB's prejudgment remedy proceeding and Tuggle's continued use of the property inconsistent with ownership by the transferees, his ex-wife and daughter. The plaintiff further claims that this, in effect, shows that the transferees had constructive knowledge of Tuggle's fraudulent intent and thereby participated in it.
The court disagrees. CT Page 7996-I
In this case, neither transferee testified in her own behalf. Nor was either transferee called to testify by the plaintiff as an adverse witness. There was no evidence that either transferee knew of CNB's initial lawsuit against Tuggle or of the amount of CNB's claim prior to the institution of this action to set aside Tuggle's conveyance, which was brought almost two years afterward. There was no evidence that either transferee was present at the signing of the deed or accepted and recorded it with actual or constructive knowledge at the time of the conveyance, that Tuggle was attemping [attempting] to avoid payment of his obligations to CNB. Neither transferee resided with Tuggle at the time of the transfer. In fact, his ex-wife then resided in California. As far as the defendant ex-wife was concerned, the circumstances regarding Tuggle's occupancy of the dwelling remained unchanged from those pre-existing the claimed fraudulent transfer; that is, Tuggle continued to reside there and pay all of the expenses. The evidence in this case does not rise to the level of Molitor v. Molitor,184 Conn. 530 (1981) (transfer to transferor's uncle in trust CT Page 7996-J for minor children, where trustee knew of pending dissolution action, asserted no interest independent of that of transferor, and had actual or constructive knowledge of transferor's intent to defraud). See also Zapolsky v. Sacks,191 Conn. 194 (1983) (transferee spouse knew of the financial straits her husband was in, was afraid of losing their family home and gave unsatisfactory testimony regarding claimed repayment of loans); Mathews v. Converse, 83 Conn. 511 (1910) (grantee's conduct, refusal to answer questions and failure to recollect recent transactions); Rocklen, Inc. v. Radulesco, 10 Conn. App. 271 (1987) (transferee spouse a willing participant in the transaction and knowingly assisted her husband in the fraudulent transfer).
In a fraudulent conveyance action, whether the transferee participated in Tuggle's fraudulent intent by accepting the conveyance is purely a factual question. Zapolsky v. Sacks, supra, 200. The plaintiff must prevail, if it prevails at all, on the strength of its own case, not on the weakness of the defendants' case. Even if it is presumed that the transferees accepted the conveyance, the CT Page 7996-K plaintiff has simply not met its burden of showing by clear, convincing and unequivocal evidence, that the transferees participated in Tuggle's fraudulent intent. Thus, the plaintiff's claim fails.
Judgment may enter for the defendants, together with costs.
Teller, J.