[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In March 5, 1997, the plaintiff commenced this action to collect the balance due on two promissory notes, along with interest and attorney's fees. On April 23, 1998, the action was withdrawn against the named defendant, Richard Siedman. The remaining defendant, Robert Schor, denied the allegations of the complaint and filed a special defense that suit was barred by the applicable statute of limitations. The court conducted a trial on March 26, 2002 and the parties filed briefs and proposed findings of fact on May 30, 2002. From the testimony, the court finds the following facts by a preponderance of the evidence:
1. The Plaintiff's Claims
On July 8, 1988 and August 27, 1990, Guardian Financial Corporation borrowed funds from Community National Bank. The borrowings are reflected in two promissory notes, the first in the face amount of $24,000 with a maturity date of July 4, 1992[1] and the second in the face amount of $150,000 with a maturity date of February 1, 1993.[2] On June 28, 1989, seven individual members of Guardian executed a guaranty agreement whereby they individually guaranteed to Community National to a limit of $500,000 every note for which Guardian "is or shall become liable including attorneys fees and costs."[3] Among those signing the guarantee was Richard L. Seidman, who along with the others, pledged himself to be "jointly and severally" liable for such amounts.[4]
Community National Bank was one of the many banks which failed in the early 1990s and was placed in receivership with the FDIC, which assigned the notes to Curtis Financial. In July, 1993, the Plaintiff Natalie Payne, the wife of one of the members of Guardian who had guaranteed the two notes in question, purchased the notes from Curtis, after it CT Page 8961 commenced suit on the notes against her husband. The court finds that the assignment from Curtis to Natalie Payne was for value, Mrs. Payne having paid the total amount of $204,306.91.[5] Further, the court finds that Mr. Payne had made payments on the notes during the time they were in default in 1992, and 1993, and prior to the assignment to Natalie Payne. No payments were made by any of the other guarantors at that time.
The court finds, from the evidence, that total amount due under the notes is $204,306.91 which includes principal and accrued interest of $47,220.99 through the date of the purchase in July, 1993. The court finds that interest accrued to the date of suit on March 5, 1997 in the amount of $74,333.08 and that interest continues to accrue at the rate of $55.97 per diem.
2. The special defense
The defendant argues that the claims made by the plaintiff are barred by the statute of limitations because this lawsuit was not commenced until May 1, 1997. General Statutes § 52-576 governs the statute of limitations under simple or implied contract actions and requires that all such actions be filed "within six years after the right of action accrues." General Statutes § 42a-3-118 (a) specifically discusses promissory notes and requires that an action to enforce a note payable at a definite time be commenced "within six years after the due date or dates stated in the note. . . ." Section 42a-3-118 was revised in 1991 to provide for this six-year statute of limitations. The Supreme Court stated in Roberts v. Caton, 224 Conn. 483, 619 A.2d 844 (1993), that "[a]lthough substantive legislation is not generally applied retroactively absent a clearly expressed legislative intent, legislation that affects only matters of procedure is presumed to [be] applicable to all actions, whether pending or not, in the absence of any expressed intention to the contrary. . . . Statutes of limitation are generally considered to be procedural, especially where the statute contains only a limitation as to time with respect to a right of action and does not itself create the right of action."[6]
Section 42a-3-118 (a) provides for a six-year statute of limitations for the enforcement of promissory notes such as the one in the present case. "[T]he true test is to establish the time when the plaintiff first could have successfully maintained an action. . . ." Gaylord Hospital v.Massaro, 5 Conn. App. 465, 467, 499 A.2d 1162 (1986). The first time the plaintiff could successfully have started this action on the first note was on the maturity date of that note, July 4, 1992 and on February 1, 1991 for the second note. Thus, the statute would have run in the first instant on July 4, 1998, and in the second on February 1, 1997. Only in the case of the larger of the two notes, the second note would the CT Page 8962 statute have run approximately three months prior to the commencement of this action.
There is, however, a second principal to be considered, as the plaintiff claims. Was the statute of limitations tolled by virtue of several partial payments made by the plaintiff's husband, William Payne? if payments were made in 1992 and 1993, as is not controverted by other evidence, then those payments would have extended the statute by a new six-year period. if we assume payment on the first date of 1993, since no precise date was given, then the new six-year period would have ended on January 1, 1999. if we assume a payment was made in 1992, again on January 1, 1992, then the last date for filing suit would have been January 1, 1998. As even the date most favorable to the defendant, January 1, 1992 with the potential limitations date of
January 1, 1998, is later than when suit was commenced, the court concludes this action is not barred by the statute of limitations.
"Partial payment of a debt which is barred by the statute of limitations removes a case from the statute provided as, under the circumstances, it constitutes an acknowledgment of the indebtedness sued upon as a then existing debt. The Statute of Limitations creates a defense to an action. It does not erase the debt. Hence, the defense can be lost by an unequivocal acknowledgment of the debt, such as a new promise, an unqualified recognition of the debt or a payment on account. Whether partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the statute of limitations is a question for the trier of fact. As with other questions of fact, unless the determination by the trial court is clearly erroneous, it must stand." (Internal quotation marks omitted; citations omitted.) Zapolsky v. Sacks, 191 Conn. 194, 198, 464 A.2d 30
(1983). Our Supreme Court has also ruled that the running of a statute of limitations "does not destroy the debt but merely bars the remedy. This is the basis upon which part payment, acknowledgment of the debt or a new promise will toll the running of the statute, for if the debt were destroyed by it, none of these could avail in the absence of a consideration." (Internal citations omitted). Markham v. Smith,119 Conn. 355, 358, 176 A. 880 (1935).
The defendant also argues, pursuant to the unreported case of WillowFunding Co. v. Grencom Associates, Docket No. CV95-0146003S, Judicial district of Stamford Norwalk at Stamford, (D'Andrea, J. August 6, 1997), that the plaintiff had an obligation to prove the debt with specificity and by competent evidence and that it could not do so by relying upon the hearsay records of other institutions. Unfortunately for the defendant in the present case, this holding cannot stand. In Willow Funding Co. v.CT Page 8963Grencom Associates, 246 Conn. 615 7171 A.2d 1211 (1998), the Supreme court held because the defendant had relied on the balance due provided, of which there was documentary evidence, the trial court erred in making its evidentiary finding. In the present case, the court notes that the assignment of the note and mortgage and the amount paid for the assignment establish by independent evidence the balance then due and the amount so paid for the two notes. The court finds, as above noted, that the indebtedness was properly established by a preponderance of the evidence.
At trial and in his brief the defendant raises certain equitable defenses. While the court is sympathetic to what is clearly his emotional and moral plight, unfortunately the law does not take such matters into legal consideration in a suit on promissory notes. The court is mindful of his attempts to collect some of the debts owed to Guardian so that Guardian could repay its debt. Mr. Seidman is to be commended for those efforts. Nevertheless, this debt is not reduced or discharged by such efforts.
For all the foregoing reasons, judgment enters in favor of the plaintiff in the total amount of $387,893.43. This sum includes the amount of $204,306.91, which includes principal and accrued interest of $47,220.99 through the date of the purchase in July, 1993. The court finds that interest accrued to the date of suit on March 5, 1997 in the amount of $74,333.08, per diem interest at the rate of $55.97 for total interest through March 5, 2002 of $102,145.25 and additional interest for 127 days through July 10, 2002 or $7,108.19 for a total balance due, including all accrued interest, of $387,893.43. The court further awards counsel fees of $5,000.00.
BY THE COURT
BARBARA M. QUINN, Judge