[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT MICHELLE AMARANTO'S MOTION FOR SUMMARY JUDGMENT
This action was instituted by the plaintiff, Daniel Garcia, alleging that the defendant Michelle Amaranto received a fraudulent transfer of property from her brother Angelo Amaranto. Angelo Amaranto is not a party to this action.[1] The plaintiff, a police officer with the city of Bridgeport, alleges the following facts in his one count amended complaint dated August 27, 1999. In August 1995, Angelo Amaranto filed a citizen's complaint against the plaintiff with the Bridgeport police department in which he claimed that the plaintiff assaulted and battered him during the course of a motor vehicle stop. Two months later, Angelo Amaranto file a civil action against the plaintiff alleging civil rights violations and assault and battery. The Bridgeport Police Department conducted an internal investigation that ultimately exonerated the plaintiff of any wrongdoing.
Prior to the trial of Angelo Amaranto's civil action against the plaintiff, Angelo Amaranto was arrested for trying to procure false statements from witnesses in connection with the action. Angelo Amaranto pleaded guilty to one count of witness tampering pursuant to the Alford Doctrine and subsequently withdrew his civil action against the plaintiff.
In March 1998, the plaintiff commenced a vexatious litigation action against Angelo Amaranto in Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 98 0351748. A default judgment entered against Angelo Amaranto in the vexatious litigation action.
In the present action, the plaintiff contends that shortly after he instituted the action for vexatious litigation, Angelo Amaranto and the defendant engaged in several property transactions, which the plaintiff maintains were done with the intent to hinder, delay or defraud him in violation of the provisions of the Uniform Fraudulent Transfer Act, General Statutes 52-552a et seq. Specifically, the plaintiff alleges CT Page 295 that: on February 18, 1998, with full knowledge of the pending criminal charges against him, Angelo Amaranto purported to convey to the defendant by quitclaim deed, his one-half interest in a residence that previously belonged to their mother;[2] on April 2, 1998, Angelo Amaranto and the defendant entered into an Agreement of Mutual Distribution in which they agreed that the defendant would have one hundred percent interest in the residence; on April 28, 1998, Angelo Amaranto again purported to convey his interest in the residence to the defendant by quitclaim deed; and on that same day, the defendant gave a mortgage of $60,000 to the other defendant, the Pacific Thrift and Loan Company. The plaintiff contends that the defendant, by not receiving a reasonably equivalent value in exchange for Angelo Amaranto's conveyance or transfer of his interest in the residence to her and by accepting said conveyances and transfers, knowingly aided, abetted and conspired with Angelo Amaranto to defraud the plaintiff and to prevent him from securing a judgment against Angelo Amaranto.
Pending before the court is the defendant's motion for summary judgment claiming that there is no issue of fact with respect to the issue of fraudulent conveyance and that she is entitled to summary judgment as a matter of law. The defendant advances four arguments in support of summary judgment: (1) title to the residence passed to the defendant without Angelo Amaranto ever owning or controlling it; (2) as Angelo Amaranto's principal residence, the property was exempt from the collection process under General Statutes § 52-352b (t); (3) the transfer was made for reasonably equivalent value and in good faith, which is an absolute defense under General Statutes § 52-552i; and (4) that the plaintiff cannot show that he has any likelihood of succeeding in his vexatious litigation action against Angelo Amaranto, which is the underlying basis for this fraudulent conveyance action.
The court concludes that based on the parties' submissions, material issues of disputed fact exist precluding summary disposition and the defendant is not entitled to summary judgment as a matter of law. Therefore, the defendant's motion for summary judgment is denied.
 DISCUSSION
"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of CT Page 296 any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Citation omitted; internal quotation marks omitted.) LaFlamme v. Dallessio, 261 Conn. 247, 250,802 A.2d 63 (2002). "[A]lthough the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) BuellIndustries, Inc. v. Greater New York Mutual Ins. Co., 259 Conn. 527,550, 791 A.2d 489 (2002).
"The Uniform Fraudulent Transfer Act [UFTA], General Statutes §§52-552a to 52-552l is largely an adoption and clarification of the standards of the common law [of fraudulent conveyances]." (Internal quotation marks omitted.) Litchfield Asset Management Corp. v. Howell,70 Conn. App. 133, 145 n. 7, 799 A.2d 298, cert. denied 261 Conn. 911,806 A.2d 49 (2002). In relevant part, General Statutes § 52-552e (a) provides that a transfer made by a debtor is fraudulent as to a creditor "if the creditor's claim arose before the transfer was made . . . and if the debtor made the transfer . . .: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer. and the debtor . . . intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."[3] "A party alleging a fraudulent transfer or conveyance bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. . . . Further, the elements of fraudulent conveyance, including whether the defendants acted with fraudulent intent, must be proven by a heightened standard of proof, that of clear, precise and unequivocal evidence." (Citation omitted; internal quotation marks omitted.) Litchfield Asset Management Corp. v. Howell, supra, 70 Conn. App. 140-41. "This standard of proof applies to intra-familial conveyances." (Internal quotation marks omitted.) Watsonv. Watson, 221 Conn. 698, 707, 607 A.2d 383 (1992). For purposes of this motion, it is important to note that "[t]he question of whether a fraudulent conveyance took place is solely a question of fact to be determined by the trier." Davenport v. Quinn, 53 Conn. App. 282, 303,730 A.2d 1184 (1999). Moreover, in the context of this cause of action, CT Page 297 "[a] question of intent raises an issue of material fact, which cannot be decided on a motion for summary judgment." Picataggio v. Romeo,36 Conn. App. 791, 794, 654 A.2d 382 (1995).
The defendant's first argument is that in order for Angelo Amaranto to perfect a transfer of his interest in the residence to her, he had to have ownership rights in the residence, and that he did not have such rights because he executed an agreement on April 28, 1998, in which he disclaimed his ownership interest in the residence before he had a chance to own it. In other words, the defendant claims that title to the residence passed to her without Angelo Amaranto ever owning or controlling it.[4] This analysis, however, is mistaken because "[u]pon death of the owner of real property, legal title to real property immediately passes to the decedent's heirs, subject to the right of the executor to administer the estate." (Citation omitted.) LaFlamme v.Dallessio, 261 Conn. supra, 251. According to the evidence, the defendant's mother died on April 8, 1993. (Certificate of Mutual Distribution). At that time, title to the residence passed immediately to both Angelo Amaranto and the defendant per their mother's will. (Plaintiff's Memorandum, Exhibit F.) Under General Statutes § 45a-579
(d), if Angelo Amaranto intended to disclaim his interest, he would have had to do so within nine months after his mother's death, which he did not do. Section 45a-579 (d) provides: "an heir . . . may disclaim in whole or in part any interest under a will . . . by delivering a written disclaimer in the manner hereinafter provided. . . . A disclaimer under this section shall be effective if made in the following manner: (1) A disclaimer of a present interest shall be delivered not later than the date which is nine months after the later of: (A) The death of the decedent . . . or (B) if the disclaimer is made by or on behalf of a natural person, the day on which such person attains the age of eighteen years . . . Angelo Amaranto's attempt to disclaim his interest in the residence five years after his mother's death was of no consequence in the context of this action.[5] As such, summary judgment may not be granted on the basis that Angelo Amaranto never owned or controlled the residence.
The defendant's second argument is that if Angelo Amaranto did transfer his interest in the residence, the transfer could not be in violation of the UFTA because any interest transferred by him was exempt under the homestead exemption. General Statutes § 52-552b defines the term asset" as "property of a debtor, but the term does not include . . . property to the extent it is generally exempt under nonbankruptcy law."[6]
A notable nonbankruptcy law exemption is the homestead exemption. General Statutes § 52-352b (t), which applies to post judgment debt collection remedies, provides: "The following property of any natural CT Page 298 person shall be exempt . . . The homestead of the exemptioner to the value of seventy-five thousand dollars, provided value shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it. . . ." ""Homestead' means owner-occupied real property. used as a primary residence." General Statutes § 52-352a (e).
There is out of state authority supporting the position that a transfer of a property interest within the homestead exemption cannot constitute a fraud on creditors. See 37 Am.Jur.2d, Fraudulent Conveyances, § 104 (1968), and cases cited therein. Our Supreme Court has not directly addressed this issue and this court will not reach the issue here because there exist material issues of disputed fact regarding the defendant's claim.
Fair market value, which is a material, disputed issue here, is a question of fact. State v. Goggin, 208 Conn. 606, 618, 546 A.2d 250
(1988). In this case, the value of the residence to Angelo Amaranto is important not only for purposes of the homestead exemption, but also for purposes of considering the adequacy of consideration.
The defendant alleges that the fair market value of the residence in 1998 was $142,000.[7] This figure comes from an appraisal that was conducted on February 24, 1998. (Defendant's Memorandum, Exhibit D.) The defendant also contends that Angelo Amaranto's interest in the value of the residence in 1998 was only $35,500, and therefore, well below the $75,000 threshold for the homestead exemption.[8] The defendant's calculations, though plausible, are devoid of the necessary indicia of veracity required for summary judgment.
Practice Book § 17-45 provides that "[a] motion for summary judgment shall be supported by such documents as may be appropriate." It is well established that "[o]nly evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." (Internal quotation marks omitted.) Great Country Bank v. Pastore,241 Conn. 423, 436, 696 A.2d 1254 (1997); see Practice Book §§ 17-45, 17-46. The defendant's appraisal and property distribution calculations are both hearsay and raise material factual disputes that require evidentiary proceedings to resolve.
The defendant's third contention is that Angelo Amaranto transferred the residence to her for reasonably equivalent value and in good faith, which is an absolute defense under General Statutes § 52-552i. However, whether Angelo Amaranto conveyed his interest in the residence with fraudulent intent and whether the defendant participated in any such CT Page 299 fraudulent scheme are purely questions of fact. Zaplosky v. Sacks,191 Conn. 194, 200, 464 A.2d 30 (1983). "It is . . . well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. . . . We have pointed out that this is particularly applicable in the case of fraudulent conveyances." (Citation omitted; internal quotation marks omitted.) Statev. Goggin, supra, 208 Conn. 619-20.
The defendant's final argument in support of summary judgment is that the plaintiff cannot show any likelihood of success in his vexatious litigation suit against Angelo Amaranto, which is the basis for the fraudulent conveyance suit. As to the plaintiff's vexatious litigation action against Angelo Amaranto. on December 11, 2001, the court, Rowan,J, granted the plaintiff's motion for default against Angelo Amaranto for failure to plead. On October 10, 2002, the matter was tried to the court as a hearing in damages. Angelo Amaranto appeared with counsel at this hearing. On November 4, 2002, the court, Doherty, J., entered an order in favor of Daniel Garcia and against Angelo Amaranto, Jr. for $30,000 non-economic damages, $15,000 punitive damages, and $12,000 counsel fees. This lawsuit against Angelo Amaranto also contained a count alleging a fraudulent conveyance to Michelle Amaranto of the very property at issue here. As to the fraudulent conveyance count of the complaint, the court order stated the following: "It is further decreed that the purported conveyance by the defendant of his right, title, and interest in and to the real property situated at 1560 Laurel Avenue in Bridgeport, Connecticut by his quit claim deed executed on or about April 2, 1998 to Michelle Amaranto is null and void as a fraudulent conveyance." Accordingly, summary judgment may not be entered in the defendant's favor on the ground that the vexatious litigation claim is meritless.
 CONCLUSION
Therefore, for the foregoing reasons, summary judgment is hereby denied.
STEVENS, J.